Hannah L. Cannom (SBN 245635)
hcannom@wscllp.com
Bethany Stevens (SBN 245672)
bstevens@wscllp.com
WALKER STEVENS CANNOM LLP
500 Molino Street, Suite 118
Los Angeles, California 90013
Telephone: (213) 337-4551
Fax: (213) 403-4906

*Attorneys for Plaintiffs*
*NETFLIX CPX, LLC and*
*NETFLIX STUDIOS, LLC*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETFLIX CPX, LLC a Delaware limited liability company, NETFLIX STUDIOS, LLC, a Delaware limited liability company,<br><br>     Plaintiffs,<br>  v.<br><br>THUNDER CHILD, LLC, a California limited liability company.<br><br>     Defendant. | Case No. 2:26-cv-732<br><br>**COMPLAINT FOR:**<br><br> 1. **BREACH OF CONTRACT;**<br> 2. **ACCOUNTS STATED;**<br> 3. **CONVERSION;**<br> 4. **MONEY HAD AND RECEIVED;**<br> 5. **TRADEMARK INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiffs, by and through their attorneys, file this Complaint seeking damages and allege as follows:

## PARTIES

1. Plaintiff Netflix CPX, LLC ("CPX") is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 5808 Sunset Blvd., Los Angeles, CA 90028.

2. Netflix Studios, LLC ("Studios") is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 5808 Sunset Blvd., Los Angeles, CA 90028.

3. CPX and Studios are referred to collectively herein as "Netflix" or "Plaintiff."

4. On information and belief, Defendant Thunder Child, LLC ("Thunder Child") is, and at all times mentioned herein has been, a California limited liability company organized and existing under the laws of California with its principal place of business at 14931 Califa Street, 2nd Floor, Sherman Oaks, California 91411.

## JURISDICTION AND VENUE

1. This action arises, in part, under the Lanham Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*., conferring Federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction on Plaintiffs' state law claims under 28 U.S.C. § 1367.

2. Moreover, Plaintiffs and Defendant expressly agreed that disputes arising out of the underlying agreement would be submitted to a court of competent jurisdiction in Los Angeles County, California, confirming Defendant's purposeful availment and consent to personal jurisdiction in this District.

3. Upon information and belief, Defendant transacts and conducts business in this District and in the State of California and is subject to the personal jurisdiction of this Court. Upon information and belief, Defendant has minimum contacts within the State of California and this District and has purposefully availed

1
COMPLAINT

itself to the privileges of conducting business in the State of California and this District. Plaintiffs' causes of action arise directly from Defendant's business contacts and other activities in the State of California and in this District.

4.      Venue is proper in this District under 28 U.S.C.§§ 1391(b) and (c), including based on Defendant's physical presence and location in the district and/or Defendant's transaction of business in this District directly and/or through affiliates and acts giving rise to the Complaint having occurred in this District.

## GENERAL FACTUAL ALLEGATIONS

### A. The Parties

5.      Netflix CPX, LLC is a Delaware limited liability company that is in the business of consumer products and experiences.

6.      Netflix Studios, LLC is a Delaware limited liability company that is in the business of production of original films and series.

7.      Upon information and belief, Defendant Thunder Child is a global immersive entertainment staffing agency that has offices in Sherman Oaks, California. Upon information and belief, Karl Stewart and Jeffrey Respress are members of Thunder Child.

### B. The Netflix – Thunder Child Agreement

8.      In or around March 17, 2024, Thunder Child entered into a written Overall Services Agreement with CPX to provide staffing, permitting, and operational support services to manage and operate Squid Game: The Trials Experience at the Manhattan Mall located at 100 West 33rd Street New York, NY 10001. The agreement and its associated Statement of Work will be referred to herein as the "Agreement."

9.      Pursuant to the Agreement, CPX, on behalf of itself and its relevant affiliates, granted Thunder Child a non-exclusive, revocable, royalty-free right to use, reproduce, and display the Netflix IP solely to the extent necessary to perform its services under the Agreement, subject in each case to Netflix's prior written

approval. The Agreement prohibits Thunder Child from using Netflix IP for any purpose other than performance of the services under the Agreement, and it prohibits any use of Netflix IP in a manner that could cause confusion as to affiliation.

10. Pursuant to the Agreement, Thunder Child agreed to recruit, onboard/train, provide front of house and back of house operations planning and oversight, oversee, and manage the day-to-day of the Squid Game: The Trials Experience (hereinafter, the "Experience"), complete payroll, provide weekly summaries of payroll actuals, acquire permits, collect uniform/costume sizes, and coordinate hired staff travel and lodging.

11. As part of the Agreement, CPX agreed to provide a $250,000 payroll advance ("Payroll Advance") to Thunder Child. CPX also agreed to provide $338,500 as an operational fee. The SOW expressly required that CPX's "Refillment" of the payroll account "cease approximately 6 weeks before end of show run," and that "any remaining balance will be refunded to CPX no later than October 31, 2025."

12. The Experience was scheduled to end on or around September 7, 2025, with a one (1) week post-event strike and a thirty (30) day post-event strike reconciliation period after that final date, unless otherwise amended or terminated as provided in the Agreement.

**C. Thunder Child Breaches the Agreement**

13. On June 24, 2025, a Netflix employee wrote to Jeff Respress, the CEO and Co-Founder of Thunder Child, regarding the Payroll Advance account because Thunder Child stated that it was unable to locate two payments from Netflix totaling $266,566.90 (the "Missing Funds").

14. On July 1, 2025, Mr. Respress stated that these funds would be available in the Thunder Child account in the next 30-60 days and that he would notify Netflix as soon as the funds posted.

15. On July 7, 2025, Mr. Respress emailed Netflix employees stating: "we will need to make other arrangements by keeping the weekly payroll remittance

going. Once the funds post, I will send an email to stop weekly payroll." This was approximately two weeks before the Experience was to end.

16. During the week of July 22, 2025, Netflix coordinated with Thunder Child to pay the weekly payroll for the Experience as a short-term stop-gap measure. Netflix also requested more information from Thunder Child regarding the Missing Funds.

17. On July 25, 2025, August 6, 2025, and August 11, 2025, Netflix again requested more information regarding the Missing Funds, including correspondence between Thunder Child and its bank. To date, Netflix has not received this information from Thunder Child.

18. On August 12, 2025, Thunder Child provided an unsigned letter from its carrier, Insureon, that stated funds in the amount of $266,566.90 would be remitted into the Thunder Child LLC account on or before September 15, 2025.

19. The Experience ended on September 1, 2025. Thunder Child maintained additional responsibilities after the end of the Experience.

20. On September 15, 2025 and September 16, 2025, employees for Netflix reached out to Thunder Child for an update on the Missing Funds. On September 16, 2025, Mr. Respress responded that Thunder Child had not yet received the Missing Funds and did not have an update as to the Missing Funds.

21. On September 24, 2025, Netflix requested that the Missing Funds be repaid within 72 hours. To date, no repayment has been made by Thunder Child.

22. On November 4, 2025, employees for Netflix emailed Mr. Respress to confirm that the total amount owed by Thunder Child to Plaintiff was $324,238 (the "Outstanding Amount").

23. On November 10, 2025, Mr. Respress emailed employees for Netflix stating that "we won't be challenging your recon" and acknowledging that the Outstanding Amount was $324,238.

**D. <u>Netflix and Its Intellectual Property</u>**

24. Netflix exclusively owns right, title, and interest in and to the Netflix name, trademarks, service marks, logos, copyrighted works, audiovisual content, promotional materials, artwork, images, and related intellectual property associated with, among other properties, *Stranger Things* and *Bridgerton*.

25. Netflix owns registered trademarks in the *Bridgerton* series. Netflix owns full right and title to U.S. Trademark No. 6,296,166 for the word mark BRIDGERTON in connection with "Entertainment services in the nature of a dramatic television series; providing online non-downloadable video clips and other multimedia digital content containing audio, video, artwork, and text from or related to a dramatic television series" in Class 41. A true and correct copy of this trademark registration is attached hereto as **Exhibit A**, which was issued by the United States Patent and Trademark Office on March 16, 2021.

26. Netflix owns many registered trademarks in the *Stranger Things* series. Netflix also owns full right and title to U.S. Trademark No. 7,213,453 for the word mark STRANGER THINGS in connection with "Provision of entertainment information via a website; providing online computer, electronic and video games; providing temporary use of non-downloadable interactive games; entertainment services in the nature of conducting exhibitions and conventions concerning television and television characters; amusement park services; fan club services; entertainment services in the nature of a live theatrical, musical or comedic performance; educational and entertainment services, namely, providing interactive online dramatic television series" in Class 41. A true and correct copy of this trademark registration is attached hereto as **Exhibit B**, which was issued by the United States Patent and Trademark Office on November 7, 2023.

27. As used herein, the foregoing BRIDGERTON and STRANGER THINGS registered trademarks, together with all registered and common law trademarks, service marks, and trade dress associated therewith and all associated

rights, titles, and interests therein are collectively referred to as the "Netflix Intellectual Property" or "Netflix IP."

### E. Netflix Demands Removal of the Netflix IP; Thunder Child Is Silent

28. On December 18, 2025, Netflix, by and through its counsel, sent correspondence to Jeff Respress at Thunder Child demanding that Thunder Child remove all Netflix IP from the Thunder Child website thereby terminating Thunder Child's license to utilize the Netflix IP. Netflix further demanded that Thunder Child pay the Outstanding Amount.

29. To date, Thunder Child has neither removed the Netflix IP from its website nor remitted any of the Outstanding Amount.

30. A true and correct copy of the Thunder Child website as of January 23, 2026, is attached hereto as **Exhibit C**.

## FIRST CAUSE OF ACTION

### Breach of Contract Against Defendant

31. Netflix realleges and incorporates by reference every allegation contained in the preceding paragraphs of this Complaint as though set forth fully herein.

32. The Agreement was a valid and binding contract between CPX and Defendant for the services provided by Thunder Child for the Experience.

33. CPX performed each and all of its conditions, covenants, and obligations required to date under the Agreement.

34. Defendant breached the Agreement by failing to timely remit the $324,238 owed thereunder by Defendant to CPX.

35. As a direct and proximate result of Defendant's breach, Netflix has suffered damages in an amount not less than $324,238 according to proof.

## SECOND CAUSE OF ACTION

### Accounts Stated Against Defendant

36. Netflix realleges and incorporates by reference every allegation

contained in the preceding paragraphs of this Complaint as though set forth fully herein.

37. On or about November 10, 2025, there was an account stated by and between CPX and Thunder Child, on which the sum of $324,238 was agreed upon as the balance due to CPX from Thunder Child pursuant to the Agreement.

38. Defendant has not paid any part of said amount although CPX has repeatedly demanded payment.

39. As a direct and proximate result of Defendant's conduct, Netflix has suffered damages in an amount not less than $324,238 according to proof.

## THIRD CAUSE OF ACTION
### Conversion Against Defendant

40. Netflix realleges and incorporates by reference every allegation contained in the preceding paragraphs of this Complaint as though set forth fully herein.

41. CPX had a right to possess the payroll funds it advanced to Thunder Child, including but not limited to the $266,566.90 in Missing Funds and the additional $57,671.10 owed under the Agreement.

42. Under the Agreement, any remaining payroll balance was required to be held for CPX's benefit, used only for Experience payroll and related costs, and refunded to CPX no later than October 31, 2025.

43. On November 10, 2025, Defendant agreed the Outstanding Amount owed by Thunder Child to CPX under the Agreement was $324,238.

44. Despite repeated demands, Defendant failed to return the Missing Funds, the additional $57,671.10 owed, and/or any other portion of the $324,238 Outstanding Amount.

45. Defendant wrongfully exercised dominion and control over CPX's funds by retaining those funds without CPX's consent and in a manner inconsistent with CPX's ownership and possessory rights.

46. As a direct and proximate result of Defendant's conduct, Netflix has suffered damages in an amount not less than $324,238 according to proof.

47. Defendant acted intentionally and in conscious disregard of Netflix's rights, entitling Netflix to punitive damages.

## FOURTH CAUSE OF ACTION

### Money Had and Received Against Defendant

48. Netflix realleges and incorporates by reference every allegation contained in the preceding paragraphs of this Complaint as though set forth fully herein.

49. Defendant received the total sum of $324,238 that Defendant admitted was owed to CPX.

50. These funds were provided for the limited purpose of administering payroll and operational obligations for the Experience, and any unused or remaining balance was required to be returned to CPX.

51. Defendant failed to return the $324,238 Defendant admitted was owed to Plaintiff. The money was not used for the benefit of CPX under the Agreement.

52. As a direct and proximate result of Defendant's conduct, Netflix has suffered damages in an amount not less than $324,238 according to proof.

## FIFTH CAUSE OF ACTION

### Trademark Infringement Against Defendant

### (15 U.S.C. §§ 1114 & 1125(a))

53. Netflix realleges and incorporates by reference every allegation contained in the preceding paragraphs of this Complaint as though set forth fully herein.

54. Netflix is the exclusive owner of the Netflix IP.

55. Netflix has continuously used the BRIDGERTON mark in commerce throughout the United States since 2020 in connection with the distribution, promotion, marketing, and advertising of the *Bridgerton* series, the "Bridgerton

Experience," and related merchandise.

56. The BRIDGERTON mark is distinctive and/or has acquired secondary meaning.

57. Netflix has continuously used the STRANGER THINGS mark in commerce throughout the United States since at least July 15, 2016 in connection with the distribution, promotion, marketing, and advertising of the *Stranger Things* series, the "Stranger Things Experience," and related merchandise.

58. Netflix is informed and believes and thereon alleges that Defendant has infringed the Netflix IP by continuing to use, copy, display, or otherwise exploiting the same after termination of the Agreement and/or following the revocation of the license by Netflix.

59. Pursuant to the Agreement, Defendant was granted a limited, revocable license to use the Netflix IP solely to the extent necessary to perform services under the Agreement, and subject to Netflix's prior written approval.

60. The license granted to Defendant was expressly limited in scope, purpose, and duration, and did not authorize Defendant to use the Netflix IP beyond the written authorizations of Defendant. The license also did not survive the completion or termination of the services.

61. Netflix demanded that Defendant remove the Netflix IP from its website; to date, Defendant has refused to do so.

62. Defendant's unauthorized use of the Netflix IP is likely to cause confusion, mistake, or deception as to the affiliation, sponsorship, or approval of Defendant by Netflix.

63. As herein alleged, the aforementioned Defendant's unauthorized use of the Netflix IP constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because Defendant's use of the marks suggests a false designation of the origin. Further, such acts of infringement by Defendant further suggest a false association with Netflix

and/or that Netflix approved of or authorized the use of the Netflix Marks and published by Defendant.

64. Defendant's conduct constitutes trademark infringement in violation of 15 U.S.C. § 1114, false designation of origin in violation of 15 U.S.C. § 1125(a), and related common-law trademark infringement.

65. Defendant's conduct has been and continues to be intentional and willful, including within the meaning of 15 U.S.C. § 1114 and § 1117. As a direct and proximate result of Defendant's unauthorized use of the Netflix IP, Defendant has damaged and will continue to damage Netflix and Netflix's goodwill and reputation; and has caused and is likely to continue to cause a loss of profits for Netflix. Defendant's actions have caused and will continue to cause irreparable harm to Netflix and to the public, who is confused by Defendant's unauthorized use of the Netflix IP, unless restrained and enjoined by this Court. Netflix has no adequate remedy at law to prevent Defendant from continuing the infringing actions and from injuring Netflix.

66. As a further direct and proximate result of Defendant's actions, Netflix has been damaged and will continue to sustain damage and is entitled to receive compensation arising from Netflix's lost profits and efforts necessary to minimize and/or prevent customer and consumer confusion, in an amount to be proven at the time of trial. In addition, Netflix is entitled to disgorge Defendant's profits and is entitled to interest and to attorneys' fees and costs in bringing this action, all in an amount to be proven at the time of trial. Netflix is further entitled to injunctive relief as set forth above, and to all other and further forms of relief this Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Netflix prays for a judgment against Defendant as follows:

a. For general damages according to proof, and in no event less than $324,238;

b. For restitution of all sums wrongfully retained by Defendant;

c. For actual damages in an amount according to proof at trial, and for any additional profits attributable to infringement of the Netflix IP;

d. For actual damages in an amount according to proof at trial, and for any additional profits attributable to infringements of the Netflix Marks, in accordance with proof at trial;

e. For statutory damages for trademark infringement and/or willful trademark infringement;

f. For special damages according to proof;

g. For punitive damages, according to proof;

h. For Declaratory Relief establishing Netflix's rights;

i. For issuance of preliminary and permanent injunctive relief against Defendant, and its respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendant, enjoining them to:

    a. refrain from using the Netflix IP in any manner and to deliver upon oath, to be impounded during the pendency of this action,

    b. destroy pursuant to judgment herein, all originals, copies, facsimiles, reproductions, or duplicates of any work shown by the evidence to infringe any of the Netflix IP.

j. For an award of attorneys' fees and costs;

k. For an award of pre-judgment and post-judgment interest for the maximum amount allowed by law;

l. For any and all other relief the Court deems just and proper.

//
//
//
//

## DEMAND FOR JURY TRIAL

Netflix demands a jury trial in this action on all claims so triable.

Dated: January 23, 2026

WALKER STEVENS CANNOM LLP

By: *Hannah L. Cannom*
Hannah L. Cannom

*Attorneys for Plaintiffs*
*NETFLIX CPX, LLC and*
*NETFLIX STUDIOS LLC*